**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>LASONYA MICHELLE COOPER,<br><br>Debtor. | Case No. 24-12917-JGR<br>Chapter 7 |
| LASONYA MICHELLE COOPER,<br><br>Plaintiff,<br><br>v.<br><br>AURORA FEDERAL CREDIT UNION,<br><br>Defendant. | Adv. Pro. No. 25-01172-JGR |

**OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment filed on March 17, 2026 (Doc. 43), Plaintiff's Response in Opposition filed March 24, 2026 (Doc. 44), Defendant's Reply thereto filed on April 7, 2026 (Doc. 45), Plaintiff's Motion to Supplement the Record filed April 9, 2026 (Doc. 46), Defendant's Opposition Response filed April 22, 2026 (Doc. 47), and Plaintiff's Reply thereto filed April 23, 2026 (Doc. 48).

## I.      Introduction

The subjects of this adversary proceeding are whether Defendant violated the automatic stay and/or the discharge injunction through communications concerning obligations secured by Plaintiff's vehicle and residence before the discharge was entered and repossession and foreclosure efforts after the discharge was entered.  For the reasons below, the Court grants Defendant's Motion for Summary Judgment, denies Plaintiff's Motion for Contempt and Sanctions, and grants the Plaintiff's Motion to Supplement the Record.

## II.      Jurisdiction, Venue, and Authority to Enter Final Judgment

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(b).  Plaintiff's claims arise under title 11 because they seek relief for alleged violations of the automatic

stay under 11 U.S.C. § 362 and the discharge injunction under 11 U.S.C. § 524. The claims also arise in her chapter 7 case because they require the Court to determine the effect of the automatic stay and enforce the discharge order entered in that case. The proceeding has been referred to this Court under 28 U.S.C. § 157(a) and D.C.COLO.LCivR 84.1(a). Venue is proper under 28 U.S.C. § 1409(a).

This is a core proceeding under 28 U.S.C. § 157(b)(1) and § 157(b)(2)(A) and (O). The claims concern rights created by the Bankruptcy Code and enforcement of this Court's automatic stay and discharge order. The Court therefore has statutory and constitutional authority to enter final judgment.

### III.    Procedural Background

Plaintiff commenced the underlying chapter 7 bankruptcy case on May 29, 2024 (Case No. 24-12917-JGR, Ch. 7 Doc. 01), with counsel. The same day, Plaintiff filed schedules listing Defendant as a secured creditor for her residence and vehicle. Plaintiff also filed a Statement of Intention, which indicated that she intended to retain her residence and vehicle and make payments to Defendant (Ch. 7 Doc. 07).

On September 9, 2024, this Court issued its Order of Discharge (Ch. 7 Doc. 23), granting Plaintiff a discharge under chapter 7, and her case was closed as a no-asset case on October 16, 2024.

Plaintiff commenced this adversary proceeding on a pro se basis, on June 2, 2025, asserting claims under 11 U.S.C. §§ 362 and 524 based on pre-discharge written communications and post-discharge repossession and foreclosure actions (Doc. 01). On July 2, 2025, Defendant filed its Answer, admitting that its agent All Star Retrievers, LLC[1] made multiple efforts to repossess the vehicle after discharge, but denying the claims for violation of the automatic stay and the discharge injunction (Doc. 04).

On July 7, 2025, Plaintiff filed a Motion for Contempt and Sanctions in the Adversary Proceeding for alleged violations of 11 U.S.C. §§ 362(a) and 524(a)(2), seeking damages for emotional distress, financial harm, punitive damages, and attorneys' fees and costs (Doc. 07). Defendant filed its Opposition Response on July 21, 2025 (Doc. 15). On August 5, 2025, this Court issued its Order Holding Motion for Contempt and Sanctions in Abeyance pending resolution of the within adversary proceeding (Doc. 18), since the issues are identical.

The parties were referred to mediation on August 25, 2025 (Doc. 23), but those efforts were unsuccessful (Doc. 27).

On November 17, 2025, Plaintiff filed an Emergency Motion for Temporary Restraining Order and Immediate Injunctive Relief, seeking relief to enjoin the foreclosure

---

[1] The Court notes that, in Defendant's Answer, it listed the recovery agent entity as "All Star Recovery," however, in Defendant's Exhibit 10 to the Motion for Summary Judgment (Doc. 43-10), the notes indicate the entity is named "All Star Retrievers, LLC." For the purposes of this opinion, the Court shall use the name as indicated on Defendant's Exhibit 10 to the Motion for Summary Judgment (Doc. 43-10).

2

of her home, real property commonly described as 435 S. Airport Blvd., Aurora, Colorado 80017 (the "Residence") with respect to a foreclosure sale scheduled for March 4, 2026. Following Defendant's Response filed December 2, 2025 (Doc. 37) and Plaintiff's Reply and Renewed Emergency Motion filed December 4, 2025 (Doc. 38), this Court issued its Order Denying Plaintiff's Emergency Motion (Doc. 39), on the basis that since the discharge the Plaintiff received in her chapter 7 case did not discharge or nullify the Defendant's security interest in the Residence, the Defendant could proceed with the foreclosure sale.

On February 11, 2026, Plaintiff filed a voluntary petition and commenced a new bankruptcy case under chapter 13 (Case No. 26-10798-JGR, Doc. 01).

On March 17, 2026, Defendant filed its Motion for Summary Judgment (Doc. 43). Plaintiff filed her Response in Opposition on March 24, 2026 (Doc. 44), and Defendant filed its Reply thereto on April 7, 2026 (Doc. 45).

Just two days later, on April 9, 2026, Plaintiff filed a Motion to Supplement the Record, seeking to add a declaration, a statement of disputed facts, emails, door tag photographs, repossession notes, and process-server screenshots to the record (Doc. 46). Defendant filed its Opposition Response on April 22, 2026, asserting that Plaintiff's Motion to Supplement should be denied or stricken as an improper post-reply attempt to cure her summary judgment response (Doc. 47). Plaintiff filed her Reply the next day (Doc. 48).

## IV.     Factual Background

The parties filed a Joint Pretrial Statement on May 13, 2026 (Doc. 49) that identifies stipulated facts, disputed issues, the parties' legal theories, and Plaintiff's claimed damages. The following facts are drawn from the parties' stipulations and the materials properly considered on summary judgment. Except where otherwise noted, they are undisputed for purposes of Defendant's motion. The Court views the evidence and draws reasonable inferences therefrom in the light most favorable to the non-moving party, here the Plaintiff.

### a.  Secured Obligations and the Chapter 7 Case

On December 30, 2022, Plaintiff entered into a loan and security agreement with Defendant to finance a 2020 Mercedes-Benz GLC300 (the "Vehicle"). The agreement granted Defendant a security interest in the Vehicle, and the Colorado Certificate of Title identifies Defendant as the first lienholder. The agreement permitted Defendant, upon default, to take possession of the Vehicle, sell it, and apply the proceeds to the secured obligation (Doc. 49).

On July 12, 2023, Plaintiff entered into an open-end home-equity credit agreement with Defendant, which provided for a $110,000 line of credit. Plaintiff also executed a revolving-credit deed of trust encumbering the Residence. The deed of trust was recorded in Arapahoe County on July 31, 2023, as Document No. E3051870. The loan

documents permitted Defendant, upon default, to accelerate the secured obligation and foreclose the deed of trust (Doc. 49).

Plaintiff filed a voluntary chapter 7 petition on May 29, 2024.  She scheduled Defendant as a secured creditor with respect to both the Vehicle and the Residence. Defendant had notice and knowledge of the bankruptcy case (Doc. 49).  Plaintiff also filed a Statement of Intention concerning the Vehicle and the Residence, stating that she intended to retain the Vehicle and the Residence and "continue to make monthly payments," (Doc. 43-6).

> b. *July and August 2024 Communications*

On July 16, 2024, while the chapter 7 case remained pending and before the discharge was entered, an employee of the Defendant sent Plaintiff an email with the subject line "Aurora Federal Credit Union—Intent To Pay." The substantive portion of the email stated:

> Be advised this email is for informational purposes only.  It concerns your intent to retain and pay for loans secured by the property at 435 S. Airport Blvd, Aurora CO 80017 and the 2020 Vehicle GLC 300 housed at the same property.  As of the date we were notified of your intent to pay no payments have been made.
>
> On or about July 10, 2024, Aurora Federal Credit Union contacted your bankruptcy attorney David Serafin.  We asked that he reach out to you due to no payments being received.  He stated he did advise you to continue payments as normal.  He said he would contact you and advise you to give us a call however, we have not heard from you.
>
> This morning, we reached out to your attorney again via email requesting confirmation of your intent to pay.  He responded stating he will ask you.  We did notice he included you in his response.  Because your attorney reached out to you, we assume you are aware of our need to speak with you.
>
> Your statement of intent is on file with the courts, and we are asking you to honor it as promised.  If it is not your intent to pay, we will ask our attorney to proceed with actions allowed by law in bankruptcy cases to retrieve monies owed on loans secured by collateral.  To give you ample opportunity to contact us, we will hold off on any actions until Monday July 22, 2024.

(Doc. 43-9).  The parties dispute whether the email was an informational communication concerning the collateral or a demand for payment.

On July 25, 2024, Plaintiff responded:

> Hello.  Please tell me how to resume payments.  Please send me the amounts that I owe on each loan.

(Doc. 43-9).

On August 6, 2024, Plaintiff asked Defendant to send paper statements to her mailing address.  The following day, Defendant's employee responded:

> I have not forgotten about your request.  Our attorney has advised that we send the information to your bankruptcy attorney, and he will forward it to you.  It is mainly due to your bankruptcy still being active.

(Doc. 43-9).  Defendant thereafter directed account communications through Plaintiff's bankruptcy counsel (Doc. 43).

### c.  Discharge and Post-Discharge Enforcement

The Court entered Plaintiff's chapter 7 discharge on September 9, 2024.  No reaffirmation agreement concerning either obligation owed to the Defendant was filed or approved.  Neither Defendant's lien on the Vehicle nor its deed of trust against the Residence were avoided or otherwise eliminated in the chapter 7 case (Doc. 49).

The discharge order specifically explained that a creditor holding an unavoided lien may enforce its claim against the debtor's property subject to the lien, including foreclosing a home mortgage or repossessing an automobile (Doc. 43-8).  The chapter 7 case closed on October 16, 2024 (Doc. 49).

After the discharge and closure of the case, Defendant retained All Star Retrievers, LLC to locate and repossess the Vehicle.  Defendant's records document repeated recovery efforts during 2025 at the Residence and other identified addresses.  The records describe agents checking streets, parking areas, alleys, and areas near garages; attempting contact at residences; and, on some occasions, leaving contact information when no one answered.  They also describe a conversation with an occupant at another address who stated that Plaintiff did not live there.  The Vehicle was not recovered during the period covered by the records (Doc. 43-10).

Plaintiff contends that the recovery activity involved more than forty visits or field contacts, repeated appearances at the Residence, surveillance, garage inspections, inquiries to neighbors and other third parties, door tags, business cards, and activity at a family friend's residence (Doc. 49).  Defendant does not dispute that its agents repeatedly attempted to locate and recover the Vehicle, but the parties dispute the purpose and character of those efforts.

Defendant also commenced foreclosure proceedings against the Residence.  A combined foreclosure notice dated October 31, 2025, identified Defendant's deed of trust and scheduled a public-trustee sale for March 4, 2026 (Doc. 43-11).  Plaintiff contends that the repossession efforts and foreclosure sale were intended to pressure her to pay the obligations.  Defendant maintains they were directed toward enforcement of its security interests in the collateral.

### d. Subsequent Chapter 13 Case

Plaintiff filed a chapter 13 petition with counsel on February 11, 2026 (Case No. 26-10798-JGR, Ch. 13 Doc. 01). For purposes of the summary judgment motion, it is undisputed that Defendant ceased its repossession and foreclosure activity after learning of that filing. As of March 17, 2026, the date Defendant filed its motion, Plaintiff remained in possession of both the Vehicle and the Residence (Doc. 43).

On May 27, 2026, Plaintiff filed an amended chapter 13 plan, proposing to cure the arrearages on Defendant's claim secured by the Residence and continue monthly payments. The plan also provided for the immediate surrender of the Vehicle to Defendant (Case No. 26-10798-JGR, Ch. 13 Doc. 34). Plaintiff's chapter 13 plan was confirmed by the Court on July 2, 2026 (Ch. 13 Doc. 41).

## V. Applicable Law

### a. Summary Judgment

Fed.R.Civ.P. 56 applies in this adversary proceeding through Fed.R.Bankr.P. 7056. Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Fed.R.Bankr.P. 7056. A fact is material if its resolution could affect the outcome under the governing substantive law. A dispute is genuine if the evidence would permit a reasonable factfinder to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. The movant may satisfy that burden by identifying an absence of evidence supporting an essential element of the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986). The nonmovant must then identify specific record evidence from which a reasonable factfinder could find in her favor. The Court views the evidence and draws reasonable inferences in favor of the nonmovant, but it does not weigh the evidence or assess credibility. *Anderson*, 477 U.S. at 249, 255.

A party asserting that a fact is genuinely disputed must cite particular materials in the record or show that the materials cited by the movant do not establish the absence of a genuine dispute. Fed.R.Civ.P. 56(c)(1). Although the Court need consider only the materials cited by the parties, it may consider other materials in the record. Fed.R.Civ.P. 56(c)(3).

L.B.R. 7056-1 requires a summary judgment response to address the movant's factual statements in correspondingly numbered paragraphs. Each factual assertion and each attempted controversion must be supported by a citation to admissible evidence. A numbered factual statement is deemed admitted for purposes of the motion unless it is specifically controverted in a correspondingly numbered paragraph. L.B.R. 7056-1(b)–(d).

6

Deeming a fact admitted does not make judgment automatic. If a party fails properly to address a factual assertion, the Court may treat the fact as undisputed, but it may grant summary judgment only if the motion and supporting materials, including the facts considered undisputed, establish that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e)(2)–(3).

### b. The Automatic Stay

The filing of a bankruptcy petition operates as a stay applicable to all entities. 11 U.S.C. § 362(a). The automatic stay is one of the fundamental debtor protections afforded by the Bankruptcy Code. The filing of a bankruptcy case activates the automatic stay, which is an injunction. As relevant here, the stay prohibits acts to obtain possession of or exercise control over property of the estate, acts to enforce a lien against property of the estate, acts to enforce against property of the debtor a lien securing a prepetition claim, and acts to collect, assess, or recover a prepetition claim against the debtor. 11 U.S.C. § 362(a)(3)–(6).

The duration of the stay depends on the conduct and property at issue. The stay of an act against property of the estate continues until the property ceases to be property of the estate. 11 U.S.C. § 362(c)(1). The stay of other acts continues until the earliest of the closing or dismissal of the case or, in an individual chapter 7 case, the granting or denial of a discharge. 11 U.S.C. § 362(c)(2).

11 U.S.C. § 362(k)(1) provides that an individual injured by a willful violation of the stay may recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, punitive damages. To recover under that provision, the individual must establish that the stay applied, the creditor committed an act prohibited by the stay, the violation was willful, and the violation caused injury. A violation is willful when the creditor knew of the automatic stay and intentionally performed the act that violated it; a specific intent to violate the Bankruptcy Code is not required. *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1171–72 (10th Cir. 2007).

The automatic stay does not prohibit every communication between a secured creditor and a debtor. L.B.R. 4001-6 identifies certain communications that are declared appropriate and not violations of the automatic stay. Specifically, the Local Rule provides:

(a) Forms of Communication; Issuance of Monthly Statements is not a Stay Violation. The following communication and issuance of monthly statements are declared appropriate and not a violation of the automatic stay:

(1) Permissible Contact with the Debtor. Secured creditors may contact the debtor about the status of insurance coverage on property that is collateral for the creditor's claim, may respond to inquiries and requests for information about the account from the debtor, and may send the debtor statements, payment coupons, information on loss mitigation or loan modifications, or other correspondence that the creditor sends to its non-debtor customers, without violating the automatic stay, provided none

7

of these communications includes an attempt to collect the debt. Permissible forms of communication are those that are sent to the debtor by creditors in the ordinary course of business, to the address that the debtor last provided to the creditor by agreement between the debtor and the creditor. In order for communication to be protected under this Rule, the communication must indicate it is provided for information purposes and does not constitute a demand for payment.

(2) Manner of Contacting Debtor. Permissible communications may be transmitted via email, facsimile, mail, commercial communications carrier, or such other mode as is mutually acceptable to the parties.

L.B.R. 4001-6.  The Local Rule strikes a balance between acceptable and unacceptable communications and alleged violations must be evaluated on a case by case basis.

L.B.R. 4001-6 establishes a safe harbor for communications satisfying its requirements; it does not define the entire universe of communications permissible under 11 U.S.C. § 362(a).  A communication that does not state that it is provided for informational purposes and/or does not constitute a demand for payment is not necessarily a stay violation.  Instead, the communication must be evaluated under 11 U.S.C. § 362(a)(6) by considering its content, context, purpose, and objective effect.

The Bankruptcy Code requires an individual chapter 7 debtor to file a statement concerning the intended treatment of property securing scheduled debts and, generally, to perform that intention within thirty days after the first date set for the meeting of creditors.  11 U.S.C. § 521(a)(2)(A)—(B).  With respect to personal property, failure to timely state and perform one of the options recognized by § 362(h) may terminate the stay as to that property.  11 U.S.C. § 362(h).  A reaffirmation agreement must be filed within sixty days after the first date set for the meeting of creditors and before the entry of the discharge, subject to extension by the Court.  Fed.R.Bankr.P. 4008(a). Communications genuinely directed toward determining whether the debtor intends to reaffirm, redeem, surrender, or otherwise perform the filed statement of intention, in the view of this Court, serve a bankruptcy-related purpose and are permissible under the statute and rules.

### c.  The Discharge Injunction and Civil Contempt

A chapter 7 discharge operates as an injunction against any action, process, or other act to collect, recover, or offset a discharged debt "as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).  The injunction therefore prohibits efforts to collect a discharged obligation from the debtor personally.

A discharge ordinarily does not extinguish a valid lien.  Unless avoided or otherwise eliminated, the lien passes through bankruptcy, and the creditor's right to proceed against the collateral survives the discharge of the debtor's personal liability. *Johnson v. Home State Bank*, 501 U.S. 78, 82–84 (1991).  The discharge thus eliminates an *in-personam* remedy but not an *in rem* remedy.  *Id.* at 84.

The substantive inquiry under 11 U.S.C. § 524(a)(2) is whether the goal of the challenged conduct, viewed objectively, was to collect the discharged obligation from the debtor personally.  Conduct may violate the injunction even without an express demand for payment if its practical effect is to coerce payment of the discharged debt.  The debtor must show more, however, than conduct that is burdensome, objectionable, or connected in some manner to a discharged obligation.  *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1308–09 (10th Cir. 2008).

11 U.S.C. § 524 does not provide an express damages remedy comparable to 11 U.S.C. § 362(k).  A bankruptcy court may enforce the discharge injunction through its civil-contempt authority under 11 U.S.C. § 105(a).  *Paul v. Iglehart*, 534 F.3d at 1306 (10th Cir. 2008); *Kellogg v. First Land Dev., LLC (In re Kellogg)*, 601 B.R. 537, 549-50 (Bankr. D. Colo. 2019).

The standard for civil contempt is distinct from the substantive scope of the discharge injunction.  A court may impose contempt sanctions only when "there is no fair ground of doubt" that the discharge order prohibited the challenged conduct.  *Taggart v. Lorenzen*, 587 U.S. 554, 561–63 (2019).  The standard is objective.  A creditor's subjective good faith does not alone preclude contempt, but contempt is unavailable when there was an objectively reasonable basis to conclude that the conduct was lawful.  *Id.*

### d.  Supplementation of the Summary Judgment Record

L.B.R. 7056-1(e) requires a response to a motion for summary judgment to be filed within fourteen days after service unless the Court orders otherwise.

Fed.R.Civ.P. 56(e)(1), made applicable by Fed.R.Bankr.P. 7056, permits the Court to give a party an opportunity to properly support or address a fact.  Whether to consider supplemental summary judgment materials rests within the Court's discretion.  *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1194 n.5 (10th Cir. 2008).  In exercising that discretion in this case, the Court considers the procedural circumstances of the request, including its timing, the opposing party's opportunity to respond, any resulting prejudice, and the effect on resolution of the motion.

## VI.   Analysis

### a.  Summary Judgment Record

Defendant's Motion substantially complies with L.B.R. 7056-1.  It identifies the governing burdens and elements, presents twenty-eight numbered statements of asserted material fact, and cites the Watts Declaration, the parties' loan documents, the chapter 7 filings and discharge order, the email correspondence, Defendant's recovery records, the foreclosure materials, and Plaintiff's discovery responses.  Although some paragraphs combine historical facts with Defendant's characterization of their legal significance, the submission is sufficiently organized and supported to require a response in the form prescribed by L.B.R. 7056-1(b) and (c).

9

Plaintiff's Response does not comply with those requirements. She did not respond to Defendant's numbered paragraphs 1 through 16, 24, 25, or 28. Her discussion of paragraphs 17 through 19, 20 through 22, 26 and 27 combines multiple factual statements together rather than addressing them in correspondingly numbered paragraphs. Although Plaintiff stated that she admitted paragraphs 20 through 22, she disputed what she described as Defendant's "narrative" concerning those facts. She did not cite record evidence supporting that qualification. Her discussion of paragraph 23 likewise consists of argument and characterization rather than a record-supported controversion of the facts in such paragraph. It is important to note the Response contains no affidavit, declaration, document, discovery response, or other material in the summary judgment record.

The Court construes Plaintiff's filings liberally because she proceeds without counsel in this adversary proceeding. Liberal construction, however, does not permit the Court to serve as her advocate, construct factual arguments on her behalf, or search the record for evidence that she did not identify. Nor does self-represented status relieve a litigant from complying with the procedural rules governing summary judgment. *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

L.B.R. 7056-1(d) provides that each numbered factual paragraph offered by the movant is deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph. The Rule also requires each attempted controversion  be supported by a citation to admissible evidence. L.B.R. 7056-1(c)–(d). Accordingly, paragraphs 1 through 16, 24, 25, and 28 are deemed admitted because Plaintiff did not respond to them. Paragraphs 20 through 22 also are admitted because Plaintiff expressly accepted those historical facts. Paragraphs 17 through 19, 23, 26 and 27 are treated as undisputed only to the extent they state historical facts supported by the cited materials and are not controverted by other evidence in the record.

That treatment has important limits. A party's failure to controvert a statement does not transform a legal conclusion, an inference, or counsel's characterization of such statement into an admitted historical fact. For example, Defendant's paragraph 18 states that the July 16 email was "for informational purposes only and not an attempt to collect" Plaintiff's personal debts. The language of the email is a fact. Whether the communication constituted an act to collect a debt within the meaning of 11 U.S.C. § 362(a)(6) is a legal determination for the Court informed by the text and surrounding circumstances. The Court therefore does not deem Defendant's characterization admitted merely because it appeared in its statement of facts. The same distinction applies to Defendant's descriptions of its post-discharge conduct as exclusively "*in rem*" and any assertion that the challenged activity did or did not violate the chapter 7 automatic stay and/or discharge injunction.

The Watts Declaration supplies the evidentiary foundation for Defendant's loan and account records. Mr. Watts states that Defendant's records were made and maintained in the ordinary course of business by persons with a duty to make and maintain them, at or near the time of the recorded events, and by persons with knowledge. He also identifies as true and correct copies of the relevant loan documents, title record,

email correspondence, vehicle-recovery notes, and foreclosure notice (Doc. 43-2). Plaintiff did not object under Rule 56(c)(2) to the Watts declaration or the documents to which it referred such that the Watts Declaration and documents would be admissible at a trial.

When the language of a document is material and unambiguous, such language of the document itself controls over each side's description of it.  The Court therefore considers the complete text of the July and August emails rather than accepting Defendant's description of them as informational or Plaintiff's description of them as an attempt to collect a debt.  The Court applies the same approach to the recovery notes, foreclosure documents, discharge order, and loan instruments.

The Court also accepts facts expressly stipulated in the parties' Joint Pretrial Statement, which was filed after the summary judgment briefing.  Those stipulations include the secured transactions, the chapter 7 filing, Defendant's knowledge of the bankruptcy, entry of the discharge, the absence of an approved reaffirmation agreement, and the continued existence of Defendant's liens.  By contrast, the sections describing the parties' claims, defenses, disputed issues, damages theories, and additional evidentiary contentions are statements of position, not stipulations or independent evidence.  Plaintiff's assertions that Defendant's conduct was "collection-oriented," "coercive," or intended to induce payment are not facts for purposes of Rule 56.

Plaintiff filed her Motion to Supplement after Defendant filed its Reply.  The Court exercises its discretion under Rule 56(e)(1) and will consider the proposed declaration and supplemental materials.  The delay was brief, Defendant had a full opportunity to respond, and consideration of the materials causes no material prejudice.  That ruling does not excuse the deficiencies in Plaintiff's original Response or convert unsupported argument into evidence.  The Court's merits analysis therefore considers the materials submitted with the original summary judgment briefing, the parties' express stipulations, and competent and relevant supplemental evidence.

Finally, deeming facts admitted does not entitle Defendant to judgment by default. Rule 56(e)(3) permits judgment only when the Motion and supporting materials state material facts for which there is no genuine dispute and prove that Defendant is entitled to judgment as a matter of law.  The Court must therefore determine, claim by claim, whether the supported historical facts and the reasonable inferences drawn in Plaintiff's favor leave genuine disputes as to material facts which necessitate a trial.  Fed.R.Civ.P. 56(e)(3).

### b. Alleged Violation of the Automatic Stay

Plaintiff alleges that Defendant violated the automatic stay through written communications concerning the two secured obligations while her chapter 7 case was pending and before the discharge was entered.  To prevail under 11 U.S.C. § 362(k)(1), she must establish that the automatic stay applied, the Defendant committed an act prohibited by the stay, the violation was willful, and the violation caused an injury. *Johnson v. Smith*, 501 F.3d 1163 at 1171–72 (10th Cir. 2007).  Defendant argues that its

written communications were informational and permissible under L.B.R. 4001-6.  It also contends that Plaintiff has not produced evidence of an injury caused by any pre-discharge communication.

i.   Scope and Duration of the Chapter 7 Stay

The automatic stay arose when Plaintiff filed her chapter 7 petition on May 29, 2024.  The stay against acts to collect a prepetition claim from her continued until the Court entered her discharge on September 9, 2024.  11 U.S.C. §§ 362(a)(6), (c)(2)(C). The stay of an act against property of the estate continued until the property ceased to be property of the estate.  11 U.S.C. § 362(c)(1).  Thus, the automatic stay applied to the Plaintiff personally from May 29, 2024, until September 9, 2024.

The next question is whether the Defendant committed an act prohibited by the stay.  The record does not reflect that Defendant attempted to repossess the Vehicle or foreclose its deed of trust before the discharge was entered or the chapter 7 case closed. The repossession efforts and pursuit of a foreclosure sale only occurred after the discharge and closure of the case.  Thus, there are no genuine disputes as to any material facts regarding repossession or foreclosure to support Plaintiff's claim that Defendant violated the automatic stay arising in the chapter 7 case.  Whether the post-discharge activity violated 11 U.S.C. § 524(a)(2) is addressed separately.

The conduct relevant to whether the stay was violated is confined to the parties' July and August 2024 email exchange.  The July 16 email is the only creditor-initiated communication that could be viewed as a demand for payment.  Plaintiff initiated the July 25 and August 6 messages.  Defendant's August 7 response stated that the requested information would be sent to Plaintiff's bankruptcy attorney because the bankruptcy remained active.

ii.   The July 16 Email

Defendant relies principally on the opening sentence of the July 16 email, which stated that the communication was "for informational purposes only."  It contends that the email concerned Plaintiff's Statement of Intention and sought only to determine whether she still intended to retain the collateral and make payments.

L.B.R. 4001-6 permits certain ordinary-course communications between secured creditors and debtors, provided the communication does not include a demand for payment.  A communication described in the Rule must indicate both that it is furnished for informational purposes and that it does not constitute a demand for payment. L.B.R. 4001-6(a)(1). More generally, whether a creditor communication violates the stay depends on its content, context, and purpose, including whether it exerts threatening or coercive pressure to obtain payment. *Colo. E. Bank & Trust v. McCarthy (In re McCarthy)*, 421 B.R. 550, 565–66 (Bankr. D. Colo. 2009).

The July 16 email does not satisfy the second condition for protection under L.B.R. 4001-6 because, although it identifies itself as being "for informational purposes only," it does not separately state that it is not a demand for payment.  Therefore, the

Court must determine whether the Defendant can still rely on the Local Rule's safe harbor. Even if the safe harbor of the Local Rule is not available, it does not follow that the communication necessarily violated 11 U.S.C. § 362(a)(6).  The Court must determine from the entire communication and its context whether it objectively constituted an act to collect, assess, or recover a prepetition claim.

Viewed as a whole, the Court finds the email sought confirmation of whether the Plaintiff intended to comply with the Statement of Intentions and did not constitute a demand for payment.  Defendant did not state an amount due, transmit a bill or payment coupon, provide payment instructions, impose a late charge, accelerate either obligation, or direct Plaintiff to remit a payment by July 22.  The requested action was simply that Plaintiff contact Defendant and confirm whether she continued to intend to retain the collateral and make payments.  The July 22 date was the date until which Defendant agreed to defer further action while awaiting contact; it was not a deadline by which Plaintiff was required to make a payment.

As an illustration that the Defendant was proceeding carefully, before contacting Plaintiff directly, Defendant contacted her bankruptcy attorney twice seeking confirmation of Plaintiff's intentions as stated in the Statement of Intentions, indicating Defendant was aware of and respecting the automatic stay.  The second communication occurred after counsel included Plaintiff in his response.  The email expressly tied Defendant's inquiry to the Statement of Intention filed in the chapter 7 case and to obligations secured by the Vehicle and Residence.  After Plaintiff requested payment information on July 25 and paper statements on August 6, Defendant directed the communications through Plaintiff's bankruptcy counsel because the automatic stay was still in effect.

A Statement of Intention is not itself a reaffirmation agreement.  However, the Defendant was within its rights to determine whether Plaintiff intended "honor" it "as promised."  How else would the Defendant know how it should proceed on the defaulted secured loans?  The phrase "retrieve monies owed" could have been stated more precisely as enforcement of Defendant's rights against the collateral.  Those phrases nevertheless must be read together with the email's express limitation that Defendant would ask its attorney to pursue "actions allowed by law in bankruptcy cases" concerning "loans secured by collateral."  After all, this is a gray area because a secured creditor is seeking to either get paid or act on the collateral.

Defendant did not threaten to repossess the Vehicle or foreclose the deed of trust without obtaining relief from stay required by bankruptcy law.  Nor did it threaten suit, garnishment, a personal judgment, a deficiency claim, or action against Plaintiff's unencumbered property.  For the Vehicle, the statutory period in which Plaintiff could perform or amend her Statement of Intention, and in which the parties could address reaffirmation, had not expired.  Failure to timely perform an intention concerning personal property could affect the continuation of the stay under 11 U.S.C. § 362(h).  Although § 362(h) does not apply to the Residence, Defendant remained entitled to seek relief from the stay concerning its deed of trust.  The email's reference to lawful future action therefore was evidence that the Defendant was abiding by the existing automatic stay.

13

The Bankruptcy Code does not prohibit a secured creditor from seeking clarification of the debtor's intended treatment of collateral or from engaging in noncoercive reaffirmation-related communications. *In re McCarthy*, 421 B.R. at 565-66. The determinative question is whether the communication had an objective purpose and effect other than collecting the debt outside the bankruptcy process. Here, the text, timing, prior communications through counsel, and express limitation to remedies permitted under bankruptcy law demonstrate such a purpose.

Plaintiff's July 25 request for instructions about resuming payments is consistent with the conclusion that the July 16 email itself established that Defendant requested confirmation and contact, not immediate payment.

Considering the unambiguous text and its context objectively, no reasonable factfinder could conclude that the July 16 email exerted threatening or coercive pressure on Plaintiff to pay a prepetition debt. The Court needs no other evidence on this point. The Plaintiff has not alleged there were any oral communications in this matter. The email communication, therefore, in the view of this Court, did not constitute an act to collect, assess, or recover a prepetition claim under 11 U.S.C. § 362(a)(6).

Because the email did not violate the automatic stay, the Court need not reach the issues of willfulness or injury. In accordance with the above analysis, there is no genuine dispute as to any material fact that the Defendant's email communications did not violate the automatic stay and requires entry of summary judgment for Defendant on the § 362(k) claim.

### c. Alleged Violation of the Discharge Injunction

Plaintiff alleges that Defendant violated the discharge injunction through its efforts to repossess the Vehicle and foreclose its deed of trust against the Residence. Defendant does not dispute that it pursued both remedies after entry of the discharge. The question is whether those actions were directed toward the collateral or instead had the practical effect of coercing Plaintiff to pay the discharged obligations as her personal liabilities.

11 U.S.C. § 524(a)(2) prohibits acts to collect a discharged debt "as a personal liability of the debtor." It does not prohibit enforcement of a valid lien against the property securing the debt. In determining whether conduct that is not an express payment demand nevertheless violates the injunction, the inquiry is objective: the Court considers whether the conduct had the practical, concrete effect of coercing payment of a discharged debt. *Paul v. Iglehart*, 534 F.3d at 1308–09 n.6. The debtor must establish not merely that the creditor's conduct was improper, but that the conduct was an effort to collect the discharged debt from the debtor personally. *Id.*

### i. Defendant's Liens Survived the Discharge

Defendant held a security interest in the Vehicle and a deed-of-trust lien against the Residence; neither lien was avoided nor eliminated in the chapter 7 case (Doc. 49).

The discharge eliminated Plaintiff's personal liability for the discharged obligations. It did not extinguish Defendant's interests in the collateral. *Johnson v. Home State Bank*, 501 U.S. 78 at 82–84; *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir. 1986) (*per curiam*).  The absence of a reaffirmation agreement confirmed that the Defendant could not enforce the obligations against Plaintiff personally, but it did not eliminate Defendant's *in rem* remedies against the collateral.

The discharge order reflected that distinction.  It prohibited creditors from suing Plaintiff, garnishing her wages, asserting a deficiency against her, or otherwise attempting to collect discharged debts from her personally.  It also explained that a creditor holding an unavoided lien may enforce its claim against the property subject to the lien, including by foreclosing a home mortgage or repossessing an automobile (Doc. 43-8).

Defendant therefore retained the right, subject to otherwise applicable law, to repossess the Vehicle and foreclose its deed of trust against the Residence.  The discharge eliminated Plaintiff's personal liability but did not extinguish Defendant's unavoided liens or the remedies available against the collateral.

ii.   Vehicle-Recovery Activity

Defendant admitted that its agent, All Star Retrievers, LLC, undertook extensive efforts to repossess the Vehicle after the discharge (Doc. 4), which Defendant was legally entitled to pursue.  Plaintiff relies principally on the frequency and manner of those efforts. She contends that recovery agents made more than forty visits or field contacts, surveilled her home and other locations, investigated garages and parking areas, left door tags or business cards, and spoke with neighbors or other third parties.  She maintains that the conduct was intended to pressure her into paying Defendant.

The issue, however, is not whether the repeated contacts were intrusive, distressing, or potentially objectionable under some other source of law.  Colorado law permits a secured party, after default, to take possession of collateral without judicial process only if it proceeds without a breach of the peace.  C.R.S. § 4-9-609(a)(1), (b)(2); *John Deere Co. of Kan. City v. Catalano*, 186 Colo. 101, 105-06, 525 P.2d 1153, 1156 (1974).  Colorado further provides that a breach of the peace "includes, but is not limited to," entering a locked or unlocked residential garage without contemporaneous permission; breaking, opening, or moving a lock, gate, or other barrier to enter enclosed real property; or using or threatening to use violent means.  C.R.S. § 4-9-601(h)(1)-(3). *See also Padilla v. Ghuman*, 183 P.3d 653, 661 (Colo. App. 2007) (applying §§ 4-9-601(h) and 4-9-625(h) where a creditor used a locksmith to enter locked premises during a self-help repossession).  But whether a recovery agent may have acted improperly under Colorado repossession law is a different question from whether Defendant violated the discharge injunction.  The issue under 11 U.S.C. § 524(a)(2) is whether the evidence permits a reasonable finding that the objective effect of the conduct was to coerce payment of the discharged obligations from Plaintiff personally.  *Paul v. Iglehart*, 534 F.3d at 1307–09.

To the extent that Plaintiff alleges the recovery agents violated Colorado law in connection with the attempted repossession, including allegations that the agents made "threats" and engaged in unauthorized garage entry, those claims may justify a claim for relief under applicable Colorado law.  Without evidence connecting the conduct to an effort to collect a discharged obligation from the Plaintiff personally, the allegations fail to establish a violation of the discharge injunction.  *Id.* at 1308, n.5.

Defendant's recovery records identify the assignment as an "Involuntary Repossession" involving the Vehicle by make, model, color, and vehicle-identification number.  The entries describe searches for the "unit" or "collateral" at Plaintiff's residence and other addresses, including searches of streets, parking areas, alleys, and areas near garages.  They also document attempts to determine whether identified addresses remained associated with Plaintiff and unsuccessful efforts to locate the Vehicle (Doc. 43-10).

The Plaintiff has not identified evidence that an agent demanded money from her, presented a written demand for payment, quoted an account balance for the purpose of obtaining payment, threatened suit or deficiency liability, offered to discontinue the visits if she paid, or otherwise conditioned cessation of the recovery efforts on payment of the discharged obligation (Doc. 43-10; Plaintiff's Exhibit B, Doc. 46).

The same is true of the door tags, notices, and third-party contacts.  The photographed tags ask the recipient to contact an agent concerning a "pending investigation," but they do not demand payment, assert that Plaintiff remained personally liable, or threaten personal consequences if she failed to pay (Plaintiff's Exhibit A, Doc. 46).  The materials concerning activity at another residence likewise do not reflect that an agent conveyed a payment demand through a neighbor or other third party (Plaintiff's Exhibit E, Doc. 46).  The fact that agents repeatedly attempted to locate Plaintiff or the Vehicle does not evidence coercion to pay the debt.

The frequency of the recovery efforts does not independently establish a discharge violation.  Conduct may be burdensome or upsetting without having the objective effect of coercing payment of a discharged debt.  *Paul v. Iglehart*, 534 F.3d at 1308–09.  11 U.S.C. § 524(a)(2) does not provide a remedy for aggressive asset recovery tactics conducted by a creditor after discharge; it prohibits acts to collect a discharged obligation from the debtor personally.

Viewing the evidence and reasonable inferences in Plaintiff's favor, the Court finds there is no genuine dispute as to any material fact to permit a reasonable factfinder to conclude that Defendant's repossession attempts were acts to collect the discharged automobile obligation from her personally rather than to obtain possession of the collateral.

iii.   Foreclosure Activity

A review of the foreclosure sale process leads to the same conclusion.  Defendant's deed of trust provides for foreclosure following a default, and the parties

stipulated that the lien against the Residence was neither avoided nor otherwise eliminated. The combined foreclosure notice identifies Defendant as the holder of the evidence of debt, states the principal balance, identifies the asserted payment default, describes the encumbered property, and gives notice of the proposed public-trustee sale (Doc. 43-11).

Those statements identify the secured obligation and the basis for enforcing the deed of trust against the Residence. The notice does not state that Plaintiff remained personally liable notwithstanding the discharge. Plaintiff has not identified language demanding payment of a post-discharge deficiency, threatening a personal judgment, or seeking recovery from her wages, bank accounts, or other nonexempt property.

Identifying the secured debt, the default, and the collateral in a foreclosure notice does not, without more, convert enforcement of a surviving lien into an attempt to collect the debt as the debtor's personal liability. *Johnson v. Home State Bank*, 501 U.S. at 82–84; *Paul v. Iglehart*, 534 F.3d at 1308–09.

Plaintiff also questions whether Defendant and the public trustee complied with Colorado foreclosure and servicing requirements, including requirements concerning notice and access to account information. The claim has nothing to do with violation of the discharge injunction. If the Plaintiff had an issue with the foreclosure process, she should have raised those concerns in the public trustee foreclosure action, or in state court at the Rule 120 hearing. A defect in a foreclosure notice, account administration, or enforcement of a surviving lien, without evidence that the conduct sought to impose personal liability for a discharged obligation, would not establish a violation of 11 U.S.C. § 524(a)(2). *Paul v. Iglehart*, 534 F.3d at 1307-08. Moreover, the foreclosure sale was stayed by the filing of the subsequent chapter 13 bankruptcy case.

Viewing the record in Plaintiff's favor, the evidence regarding the foreclosure process shows there is no genuine dispute as to any material fact to establish that Defendant sought to collect the home-equity obligation as her personal liability. Nothing in the foreclosure notice would permit a reasonable factfinder to conclude that Defendant attempted to collect a debt from the Plaintiff personally. Rather, Defendant was seeking to enforce the deed of trust against the Residence.

### iv.   The Evidence Does Not Establish a Violation or Civil Contempt

The record does not permit a reasonable finding that Defendant violated 11 U.S.C. § 524(a)(2). Defendant's challenged post-discharge conduct concerned repossession of the Vehicle and foreclosure of the Residence. Both remedies were preserved by unavoided liens and expressly recognized in the discharge order. Plaintiff has not identified evidence of a demand that she pay a discharged deficiency, a threat to obtain a personal judgment, garnishment or other process against her unencumbered assets, or an offer to discontinue the enforcement activity in exchange for personal payment.

17

A court may impose contempt sanctions only when there is "no fair ground of doubt" that the discharge order barred the challenged conduct. *Taggart v. Lorenzen*, 587 U.S. 554 at 561–63. The standard is objective and precludes contempt when there was an objectively reasonable basis to conclude that the conduct was lawful. *Id.*

Here, the discharge order expressly advised that a creditor holding an unavoided lien may repossess an automobile or foreclose a mortgage. Defendant held liens against the Vehicle and the Residence, and the challenged activity was the pursuit of repossession and foreclosure remedies. Those circumstances establish, at minimum, a fair ground of doubt as to whether the discharge order prohibited Defendant's conduct. Plus, the Plaintiff could have avoided the extensive repossession efforts by voluntarily surrendering the Vehicle rather than hiding it, since she was certainly aware the Defendant was trying to repossess it. Although the Court believes much of her conduct stemmed from her misunderstanding that her bankruptcy discharge extinguished the liens, the Court has never seen a case, in over forty-three years of bankruptcy practice, of a debtor going to such great lengths to avoid a vehicle repossession.

Defendant is entitled to summary judgment on Plaintiff's discharge injunction claim because the record reveals there is no genuine dispute as to any material fact that Defendant violated 11 U.S.C. § 524(a)(2) or was liable for civil contempt under *Taggart*.

### d. Effect of the Later Chapter 13 Case

Plaintiff filed a chapter 13 petition on February 11, 2026, commencing Case No. 26-10798-JGR. That filing created a new automatic stay prospectively. It did not revive the automatic stay that had terminated in the prior chapter 7 case or operate retroactively with respect to conduct occurring before February 11, 2026. 11 U.S.C. § 362(a).

The subsequent filing therefore does not alter the legal framework governing Defendant's earlier conduct. The July and August 2024 communications were subject to the automatic stay arising in the chapter 7 case. Defendant's repossession attempts and pursuit of a foreclosure occurring after the chapter 7 discharge but before the chapter 13 filing were subject to the discharge injunction.

Plaintiff's treatment of Defendant's secured claims in the chapter 13 case is consistent with the continued existence of Defendant's liens.

This adversary proceeding does not present a claim for violation of the automatic stay arising in the chapter 13 case. Plaintiff filed the Complaint approximately eight months before commencing that case. The summary judgment record also reflects that Defendant ceased its repossession and foreclosure activity after learning of the chapter 13 filing. Accordingly, the later chapter 13 case supplies no independent basis for relief in this adversary proceeding and does not change the Court's conclusions concerning the chapter 7 automatic stay and discharge injunction claims.

### e. Plaintiff's Motion to Supplement the Summary Judgment Record

Defendant filed its Motion for Summary Judgment on March 17, 2026.  Plaintiff filed a timely Response on March 24, and Defendant filed its Reply on April 7.  Two days later, Plaintiff filed the Motion to Supplement, seeking to add a declaration, a separate statement of disputed facts, additional argument, and supporting documents and photographs.  Defendant opposed the request and moved to strike the proposed supplement.

Plaintiff had no automatic right to supplement her opposition after Defendant filed its Reply.  Rule 56(e)(1), however, permits the Court to give a party an opportunity to support or address a fact that was not properly presented.  Fed.R.Civ.P. 56(e)(1).  Whether to permit supplementation under that provision rests within the Court's discretion.  *Hinds*, 523 F.3d at 1194, n.5.

The relevant considerations favor resolving the Motion on the complete record.  Plaintiff filed the Motion to Supplement only two days after Defendant's Reply.  There is no indication of bad faith, and consideration of the materials will not delay resolution of the summary judgment motion.  Defendant received notice of the proposed evidence, filed a substantive opposition, and had a full opportunity to address both the procedural request and the materials themselves.  It therefore will suffer no material prejudice from their consideration.

The Court accordingly exercises its discretion under Rule 56(e)(1) to consider Plaintiff's declaration and the exhibits submitted with the Motion to Supplement.  This ruling does not excuse the deficiencies in her original Response, convert unsupported argument into evidence, or give evidentiary weight to the proposed separate statement of disputed facts.  The Court considers only competent evidence contained in the supplemental submission and draws reasonable inferences from that evidence in Plaintiff's favor.

The July and August 2024 emails appear in the original summary judgment record as Defendant's Exhibit 9 and again in the supplemental record as Plaintiff's Exhibit D (Doc. 43-9; Doc. 46).  Plaintiff's supplemental materials also include communications concerning her requests for payment instructions, account information, and statements (Plaintiff's Exhibit C, Doc. 46).  Those materials do not alter the Court's finding of the effect of the July 16 email.  As explained above, the July 16 email did not constitute an act to collect a prepetition claim and therefore did not violate the automatic stay.  The supplemental materials do not alter the Court's determination that the email was a permissible communication concerning Plaintiff's intention with respect to Defendant's secured collateral.

The supplemental declaration does not cure that deficiency.  Plaintiff states that the July 16 email created "pressure and confusion," (Doc. 46).  The Court finds the "pressure and confusion" arose because she was in default on both of the secured loans.  She also states generally that she experienced stress, anxiety, and disruption, and that Defendant interfered with her ability to manage her affairs, all of which could have been avoided if she remained current on her secured obligations or voluntarily surrendered the Vehicle.

19

The supplemental door tag and notice photographs request contact concerning a "pending investigation," but they do not demand payment, assert that Plaintiff remains personally liable, threaten a deficiency judgment or other personal consequences, or condition cessation of the recovery activity on payment (Plaintiff's Exhibit A, Doc. 46). The additional recovery records document repeated visits, searches, and other efforts to locate the Vehicle (Plaintiff's Exhibit B, Doc. 46). Those efforts are not disputed for purposes of summary judgment. Defendant admitted that its recovery agent repeatedly attempted to locate and repossess the Vehicle, which was the result of the Plaintiff playing games and hiding the Vehicle.

The supplemental materials also include evidence concerning contacts at other addresses and notices left at a third party's residence (Plaintiff's Exhibit E, Doc. 46). Even viewed in the Plaintiff's favor, those materials do not contain or document a demand that Plaintiff pay the discharged debt, an assertion that she remained personally liable, a threat of personal collection consequences, or an offer to discontinue the field activity in exchange for payment. They therefore do not create a genuine dispute as to whether Defendant attempted to collect the discharged automobile obligation from Plaintiff personally.

The process server photographs or screenshots (Plaintiff's Exhibit F, Doc. 46) likewise do not materially affect either claim. Those materials concern alleged improper conduct related to service of papers but the evidence in summary judgment record fails to establish the service was made in an effort to collect a discharged obligation as Plaintiff's personal liability. Plaintiff's declaration alleges that the process server called her names, threw documents, and made a comment during attempted service. Even accepting that account, an objection to the manner of the repossession process does not establish a violation of the discharge injunction since there is no evidence of an attempt to collect the debt against the Plaintiff personally. Again, if she has claims against the Defendant for improper repossession, those are matters for the state court. In sum, Plaintiff brought the aggressive collection efforts upon herself.

Consideration of the supplemental materials therefore does not alter the disposition of Defendant's Motion for Summary Judgment.

Plaintiff's Motion to Supplement is granted for the limited purpose of considering the proposed materials. Because the Court has considered those materials, Defendant's alternative request to strike them is denied.

### f.   Plaintiff's Motion for Contempt, Sanctions, and Other Relief

Plaintiff's Motion for Contempt and Sanctions filed on July 7, 2025 (Doc. 07) seeks relief based on the same pre-discharge communication and post-discharge enforcement activity addressed above. To the extent the Motion seeks damages for an alleged violation of the automatic stay, the request is governed by 11 U.S.C. § 362(k)(1). For the reasons stated above, the Court finds the July 16 email did not constitute an act to collect, assess, or recover a prepetition claim and therefore did not violate 11 U.S.C. § 362(a)(6).

The request for civil-contempt sanctions based on the discharge injunction also fails. As explained above, the record does not permit a reasonable finding that Defendant sought to collect the discharged obligations from Plaintiff personally rather than enforce its surviving liens against the Vehicle and the Residence. The record does not satisfy *Taggart* because there was, at minimum, a fair ground of doubt whether the discharge order prohibited Defendant's repossession and foreclosure activity.

## VII.   Conclusion

Even when viewed in the most favorable light to the Plaintiff, the evidence in the record before the Court fails to establish that the Defendant violated the automatic stay. The Plaintiff has failed to raise genuine disputes of material fact to preclude the entry of judgment in favor of the Defendant as a matter of law. Defendant's July 16, 2024 email did not violate the automatic stay. Viewed objectively and in its complete context, the communication sought information as to whether the Plaintiff intended to comply with the Statement of Intentions regarding the Vehicle and Residence while the relevant chapter 7 deadlines remained pending. It was not a demand for payment and did not threaten immediate action outside the bankruptcy process or assert that Defendant could pursue Plaintiff personally. Its express limitation to actions permitted under bankruptcy law, together with its content, timing, and context, established that it was not an act to collect, assess, or recover a prepetition claim under 11 U.S.C. § 362(a)(6). Defendant is entitled to summary judgement on Plaintiff's claims for relief under 11 U.S.C. § 362(k)(1).

Even when viewed in the light most favorable to the Plaintiff, the evidence in the record before the Court fails to establish that Defendant's post-discharge repossession and foreclosure activity sought to collect the discharged obligations from Plaintiff personally rather than enforce its surviving liens against the collateral. The Plaintiff failed to raise genuine disputes of material facts to preclude the entry of judgment in favor of the Defendant as a matter of law. Defendant is entitled to summary judgment on the discharge injunction claim.

Plaintiff's request for civil contempt cannot succeed because it was based on the same allegations raised in the complaint for violation of the automatic stay and the discharge injunction.

Therefore, Defendant is entitled to summary judgment on the automatic stay, discharge injunction and civil contempt claims and Plaintiff's Motion for Contempt and Sanctions (Doc. 07) is denied.

## VIII.   Orders

Accordingly, the Court ORDERS:

1. Plaintiff's Motion to Supplement the Summary-Judgment Record (Doc. 46) is GRANTED for the limited purpose of the Court's consideration of the submitted materials.

2. Aurora Federal Credit Union's request to strike the supplemental materials (Doc. 47) is DENIED.

3. Plaintiff's Motion for Contempt and Sanctions (Doc. 7), including the requests for damages, sanctions, and equitable relief based on the alleged violations of the chapter 7 automatic stay and discharge injunction, is DENIED.

4. Defendant's Motion for Summary Judgment (Doc. 43) is GRANTED.  Plaintiff's complaint is DISMISSED WITH PREJUDICE, each party to pay their own costs and fees.

5. A separate final judgment will enter in favor of Defendant and against Plaintiff pursuant to Fed.R.Bankr.P. 7058.

Dated this 10th day of August, 2026.

BY THE COURT:

_____

Hon. Joseph G. Rosania, Jr.
U.S. Bankruptcy Judge